[Cite as *State v. Belcher*, 2013-Ohio-3142.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99127**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KAMERON BELCHER

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-563147

**BEFORE:** Rocco, P.J., Blackmon, J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** July 18, 2013

**ATTORNEY FOR APPELLANT**

John T. Castele
614 West Superior Avenue
Suite 1310
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:   Maxwell M. Martin
        Assistant County Prosecutor
Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, P.J.:

{¶1} Defendant-appellant Kameron Belcher ("Belcher") appeals from his convictions for aggravated robbery (with firearm specifications and a notice of prior conviction specification), theft, and petty theft. Belcher's appeal is based on allegations of ineffective assistance of counsel, improperly admitted evidence, and prosecutorial misconduct. We conclude that Belcher received a fair trial, and we affirm the trial court's final judgment.

{¶2} The evidence at trial revealed that on May 3, 2011, Willie Williams ("Williams"), an off-duty Cleveland police officer, was robbed at gunpoint in the driveway of his home. Williams reported that the suspect pointed a gun at him, threatening to shoot him in the face if he did not turn over his money. The suspect took Williams's money as well as his wallet, which contained Williams's police identification and badge.

{¶3} Williams testified that he was looking at the suspect during the entire interaction. Williams reported that he was approximately 10-to-12 feet from the suspect, that it was daylight, and that he has no trouble seeing at a distance from 5-to-15 feet. Although the suspect wore the hood of his hooded sweatshirt up around his head, Williams stated that the hood did not obscure the suspect's face and that he got a good look at his face. Williams testified, "I would remember [the suspect] for the rest of my life, any day that I would see him. I'm looking up into his face. I'm looking into his

eyes. I'm looking at his nose and I'm looking at his mouth. And I'm staring at him so much he kept telling me, quit looking at me." Tr. 161.

{¶4} After robbing Williams, the suspect ran off. About one year later, Williams received a phone call from a law enforcement officer informing him that they had found Williams's police identification and badge on a patient at a hospital. That patient was Belcher.

{¶5} Williams went to the police station to look at a photo lineup compiled by Det. Torres. Det. Torres was not originally assigned to Williams's case, but became involved after Belcher was found in possession of Williams's badge and identification. Det. Torres compiled a photo array for Williams using the Ohio Law Enforcement Gateway ("OLEG"). Because Det. Torres used OLEG, she was able to see whether other law enforcement had ever accessed Belcher's photo, and she determined that Belcher's photo had not been accessed by other law enforcement. Det. Torres inputted Belcher's identifying characteristics into OLEG, and the system generated BMV photographs of persons with similar characteristics. The six photos chosen for the photo array were all of the same race, approximate age, weight, height, and complexion.

{¶6} Because Det. Torres had not originally worked on Williams's case, she was unaware of the fact that Williams had originally described his assailant as wearing a gray hooded sweatshirt. In the photo array compiled by Det. Torres, Belcher is wearing a gray hooded sweatshirt, because that was what he was wearing in his BMV photograph. Det. Torres acknowledged that, had she known that Williams had described his assailant as

wearing a gray hooded sweatshirt, she would have put more than one person in the photo array wearing that article of clothing.

{¶7} Using a procedure known as blind administration, Det. Torres created the photo array, but Det. Legg was the person who administered the photo array to Williams. Det. Legg testified that blind administration is used to remove any signs of bias when the photo lineup is presented to the victim or witness. Det. Legg did not know which of the photographs in the array, if any, depicted Belcher. Det. Torres was not present when Det. Legg administered the photo array.

{¶8} After being shown the photo array, Williams identified the photo of Belcher as his assailant, circled Belcher's photo, signed his name, and indicated that he was 100 percent certain that Belcher was the man who robbed him. Williams also made an in-court identification of Belcher.

{¶9} At trial, Det. Legg testified about a supplementary form that had been filled out after the photo array administration. Det. Legg stated that he was not the person who filled out the form. The form indicated that the blind administrator had not informed the witness that the suspect may or may not be in the lineup. But Det. Legg testified that the form was incorrect, that he always reads a specific set of instructions to a witness when conducting a blind administration, that those instructions indicate that the suspect may or may not be depicted in the photo array, and that he had, in fact, read those instructions to Williams. Williams also testified that when Det. Legg showed Williams the photo array,

he had read instructions to Williams indicating that the suspect may or may not appear in the photo array.

{¶10} The jury convicted Belcher on all charges and specifications. Belcher now appeals, setting forth four assignments of error for our review.

> I. Belcher was denied effective assistance of counsel depriving him of his right to a fair trial.

> II. The trial court erred in admitting into evidence a black and white copy of a color photo array.

> III. Belcher was materially prejudiced by improper statements made by the prosecutor during closing arguments.

> IV. Belcher was deprived of his right to a fair trial by the cumulative effect of all errors, even if any one of those errors may be ruled as harmless.

{¶11} In his first assignment of error, Belcher argues that his trial counsel was ineffective for the following reasons: (1) failure to file a motion to suppress Williams's pretrial identification of Belcher; (2) failure to object at trial to the introduction of the pretrial identification; and (3) failure to request applicable jury instructions regarding the pretrial identification.

{¶12} A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant cannot prevail on an ineffective assistance of counsel claim unless he can show that his counsel's performance was deficient, and that this deficiency deprived the defendant of a fair and reliable trial. *Id.*

**{¶13}** When a defendant claims his counsel was ineffective for failing to file a motion to suppress evidence, he must first prove that there was a basis to grant the motion. *State v. Hayes*, 8th Dist. No. 93785, 2010-Ohio-5234, ¶ 25. Even if the defendant can point to some evidence in the record that supports a motion to suppress, we will still presume counsel was effective if "'counsel could have decided that the filing of a motion to suppress would have been a futile act.'" *State v. Chandler*, 8th Dist. No. 81817, 2003-Ohio-6037, ¶ 37, quoting *State v. Edwards*, 8th Dist. No. 69077, 1996 Ohio App. LEXIS 3033 (July 11, 1996).

**{¶14}** A reviewing court applies a two-prong test in determining whether identification testimony was admissible. Under the first prong, the defendant must show that the identification procedure was unduly suggestive. If we determine that it was, we then examine "whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character." *State v. Thompson*, 8th Dist. No. 96929, 2012-Ohio-921, ¶ 18.

**{¶15}** A valid photo array does not require that the defendant be surrounded by people nearly identical in appearance. *State v. Bryson*, 8th Dist. No. 98298, 2013-Ohio-934, ¶ 47. A photo array is not unduly suggestive if the other men shown alongside the defendant look "'relatively similar in age, features, skin tone, facial hair, dress, and photo background * * *.'" *Id.* at ¶ 43, quoting *State v. Jacobs*, 7th Dist. No. 99-CA-110, 2002-Ohio-5240, ¶ 18.

{¶16} Unless impracticable, law enforcement should conduct photo lineups using a blind or blinded administrator. R.C. 2933.83(B)(1); *Bryson* at ¶ 49. Blind administrator means that the person administering the photo array does not know the suspect's identity. R.C. 2933.83(A)(2). When a blind administrator conducts the photo lineup, they "shall inform the eyewitness that the suspect may or may not be in the lineup and that the administrator does not know who the suspect is." R.C. 2933.83(B)(5). "When evidence of a failure to comply with" this provision "is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup." R.C. 2933.83(C)(3). Failure to comply with the blind administrator requirements is not an independent basis for suppression. *State v. Stevenson*, 2d Dist. No. 24821, 2012-Ohio-3396, ¶ 16.

{¶17} Belcher makes two arguments in support of his position that the photo lineup was unduly suggestive. First, Belcher points out that he is the only person in the photo array wearing a gray hooded sweatshirt and that Williams originally described his assailant as wearing a gray hooded sweatshirt. Although not ideal, this fact does not, standing alone, render the photo array unduly suggestive. Det. Torres testified that, had she known that Williams's assailant was wearing a gray hooded sweatshirt, she would have included more than one picture of a person wearing a gray hooded sweatshirt. Regardless of this mistake, the photo array otherwise depicted people who looked relatively similar to Belcher in terms of race, approximate age, weight, height, and

complexion. Although no one else in the photo array was wearing gray, the other pictures depicted people who were otherwise dressed similarly to Belcher in that they all wore casual clothes such as sweatshirts or T-shirts.

{¶18} Belcher next asserts that, although the photo lineup was conducted using a blind administrator, law enforcement did not utilize the correct statutory procedures. Specifically, Belcher points out that the "no" box is checked on the supplementary form asking whether the witness was informed that the suspect may or may not appear in the photo array.

{¶19} Applying R.C. 2933.83(C)(3) to the record in this case, we conclude that Belcher's counsel should have requested a jury instruction stating that the jury could "consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup." The supplementary form that was admitted into evidence indicated that Williams had not been told that the suspect may or may not be in the photo array. This form constituted credible evidence that law enforcement did not comply with R.C. 2933.83(B)(5) when conducting the photo lineup. Although this evidence warranted a jury instruction, it did not provide an independent basis upon which the trial court could have granted a motion to suppress.

{¶20} Based on the foregoing, Belcher's trial counsel could have reasonably determined that filing a motion to suppress the pretrial identification was futile. Similarly reasonable was trial counsel's decision not to object at trial to the introduction of the pretrial identification. These trial tactics do not constitute deficient performance.

**{¶21}** Accordingly, as we move to the prejudice prong of *Strickland*, our only question is whether Belcher was prejudiced by his trial counsel's failure to ask for a jury instruction under R.C. 2933.83(C)(3). The answer is no. The jury heard testimony about the supplementary form, and the form itself was admitted into evidence. The jury also heard testimony from both Det. Legg and Williams indicating that the form was incorrect and that Det. Legg did read Williams the instruction that the suspect may or may not appear in the photo array. Furthermore, Det. Legg testified that he was not the person who filled out the form. The jury was presented with the conflicting evidence and was able to reach a conclusion as to whether the instruction was read. Even if the jury determined that the instruction was not read, the jury still could have reasonably concluded that Williams's identification of Belcher was reliable. Trial counsel's failure to ask for a jury instruction did not prejudice Belcher, and we overrule the first assignment of error.

**{¶22}** In his second assignment of error, Belcher asserts that the trial court erred in admitting into evidence a black and white copy of the original color photo array from which Williams made his pretrial identification of Belcher. We disagree.

**{¶23}** The decision as to whether to admit or exclude evidence lies in the trial court's sound discretion, and we will not disturb the trial court's ruling absent an abuse of discretion, meaning the ruling is "contrary to law, unreasonable, not supported by the evidence, or grossly unsound." *State v. Taylor*, 8th Dist. No. 98107, 2012-Ohio-5421, ¶

22. The defendant is also required to demonstrate that he was materially prejudiced by the ruling. *Id.*

{¶24} Although the best evidence rule generally requires that the original photograph itself be used to prove the contents of the photograph, there are exceptions. A "*duplicate* is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." (Emphasis added.) Evid.R. 1003. Under Evid.R. 1004, "the original is not required, and *other evidence* of the contents of a * * * photograph is admissible if * * * [a]ll originals are lost or have been destroyed unless the proponent lost or destroyed them in bad faith." (Emphasis added.)

{¶25} In the instant case, the trial court relied on Evid.R. 1004, and admitted the black and white copy of the photo array over Belcher's objection. Belcher argues that the trial court abused its discretion because the black and white copy was not a "duplicate" under the rules of evidence.

{¶26} We conclude that the trial court did not abuse its discretion in admitting the black and white copy under Evid.R. 1004, regardless of whether the black and white copy constituted a "duplicate." Evid.R. 1004 does not specify or limit what type of secondary evidence can be used to prove the contents of an original photograph. The plain language of the rule provides that "other evidence" is admissible. "Other evidence" is not limited to "duplicates." *See, e.g., State v. Moultry*, 9th Dist. No. 25065,

2010-Ohio-3010, ¶ 13 ("other evidence" includes testimony regarding the contents of a recording or a surveillance tape).

{¶27} In this case, the trial court heard testimony that the original color photo array had been lost and determined that the black and white copy of the photo was admissible secondary evidence to prove the contents of the original photograph. The trial court reasoned that the jury was capable of taking into consideration the differences between the color photograph and the black and white photograph, that the black and white photograph would be of some value to Belcher, and that there was no allegation of bad faith on the part of the state. We cannot say that the trial court's ruling was contrary to law, unreasonable, unsupported by the evidence, or grossly unsound. We uphold the trial court's ruling, and we overrule the second assignment of error.

{¶28} In his third assignment of error, Belcher argues that he was materially prejudiced by improper statements made by the prosecutor during closing arguments. We disagree. When reviewing a claim of prosecutorial misconduct during closing arguments, we first determine whether the remarks were improper. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149. "'[B]oth the prosecution and the defense have wide latitude in summation as to what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *State v. Lott,* 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). But "[p]rosecutors must avoid insinuations and assertions calculated to mislead.

They may not express their personal beliefs or opinions regarding the guilt of the accused, and they may not allude to matters not supported by admissible evidence." *Lott* at 166.

{¶29} If we conclude that the remarks were improper, we next ask whether the remarks prejudicially affected the defendant's substantial rights such that the defendant's trial was unfair. *Powell* at ¶ 149. This requires us to examine the offending comments in the broader context of the entire case. *Id.* Our inquiry is guided by concern for "'the fairness of the trial, not the culpability of the prosecutor.'" *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶30} Belcher first asserts that the prosecutor violated his right to remain silent by improperly insinuating that Belcher's failure to present a defense proved that he was guilty. A prosecutor cannot critically comment on a defendant's exercise of his right to remain silent. *State v. Hough*, 8th Dist. No. 91691, 2011-Ohio-2656, ¶ 7. But the record in this case does not demonstrate that the prosecutor made such a comment. In support of his argument, Belcher points to the following statements made by the prosecutor, which were admitted over Belcher's objections:

> Listen, the defendant does not have any obligation to put on any case. But in her opening statement [defense counsel] did tell you what she believed would be proven at trial. I think it bears revisiting to see what she told you what was going to be proven and what was proven.
>
> * * *
>
> What we did not hear any testimony about was the fight between the defendant and his girlfriend.
>
> * * *

Which allegedly led to a suicide attempt.   We heard nothing about a suicide attempt.

\* \* \*

Ladies and gentlemen, I want to clarify something.   What I'm saying is this:   And again, I'll reiterate this:   The defendant has no obligation to put on a case, take the stand, none of that.   You can't hold it against him.   And I really urge you to follow the rule of law that the judge is going to read to you.
However, you were told in opening statements that the defendant's girlfriend would come here and corroborate the statements and the theory of the case that the defense attorney put forward.

You were told that she, the girlfriend, Danielle Bush, would tell you

\* \* \*

that the defendant found the badge in her front yard in December or January and hung on to it for six months.   There is no evidence to that effect at all.   It is not to be considered.

Tr. 370-372.   These comments are not improper.   The prosecutor did not make reference to Belcher's decision not to testify or to present a defense; rather, the prosecutor pointed out that Belcher's theory of the case that was presented in opening arguments was not supported by the evidence presented at trial.   There is nothing improper about pointing this out to the jury.   *See State v. Jackson*, 8th Dist. No. 76141, 2000 Ohio App. LEXIS 1741, \*31 (Apr. 20, 2000)   ("It is not improper for the prosecution, in closing, to point out the lack of evidence supporting the defense theory of the case").   Because the remarks were not improper, Belcher's argument is without merit.

**{¶31}** Next, Belcher asserts that the prosecutor alluded to matters that were not supported by evidence. Specifically, the prosecutor stated that Belcher carried Williams's badge around with him everywhere he went:

> [T]he state's theory of the case is this: [Belcher] robbed * * * Williams, didn't know what he was getting into, but when he robbed him he, of course, got the police badge. That police badge represented to * * * Williams 30 years of service to his community, serving and protecting. To the defendant it became a trophy that he carried with him every day. It became a keepsake.
>
> * * *
>
> To the point that he didn't leave the house without it.

Tr. 378-379. Relatedly, the prosecutor interjected a personal story that was designed to insinuate that Belcher would not have found the badge and carried it around unless he had committed the crimes for which he was indicted. The prosecutor told a personal story about how he had found a 1997 American league championship ring under the carpet of his house, and, while he loved the ring, he returned it to the owner because he knew it was not his to keep. The prosecutor then segued back to Williams's badge that was found on Belcher and said:

> You don't carry around an item like that. You don't carry around an item like this from May, unless you believe you earned it, unless you believe you earned it because you robbed a police officer, an off-duty police officer, for it.

Tr. 380.

**{¶32}** We conclude that the above comments do not constitute prosecutorial misconduct. The remark that Belcher carried around the badge wherever he went was

based on a reasonable inference drawn from the evidence. The prosecutor's theory of the case was that Belcher robbed Williams and carried the badge around as a trophy. Trial testimony indicated that the badge was found on Belcher one year after Williams was robbed. The prosecutor fairly inferred from this evidence that Belcher carried around the badge everywhere he went. The prosecutor's use of a personal story was also used to illustrate the theory that Belcher carried the badge as a trophy. Although the story was not based on evidence in the record, the story did not deprive Belcher of a fair trial. Belcher cannot demonstrate prosecutorial misconduct, and so we overrule the third assignment of error.

{¶33} In his fourth assignment of error, Belcher argues that he was deprived of his right to a fair trial by the cumulative effect of all errors, even if any one of those errors may be ruled as harmless. The only possible errors that we have identified are the lack of a jury instruction regarding the photo array and the prosecutor's use of a personal story during closing arguments. We conclude that these discrepancies did not deprive Belcher of a fair trial, and so we overrule the fourth assignment of error.

{¶34} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
EILEEN T. GALLAGHER, J., CONCUR