[Cite as *State v. Wilson*, 2026-Ohio-927.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 114998 |
| ARBIE WILSON, | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 19, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-676894-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Alicia Paolucci and Margaret Graham, Assistant Prosecuting Attorneys, *for appellee.*

Paul B. Daiker, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Appellant Arbie Wilson ("Wilson") appeals the trial court's various rulings regarding prosecutorial questions and comments as well as rulings regarding the admissibility and use of various exhibits at trial. For the reasons that follow, we affirm.

**Facts and Procedural History**

{¶ 2} Wilson and D.E. met in Atlanta, Georgia on November 15, 2022. Wilson came to Cleveland and flew D.E. with him. They stayed at an area Airbnb. In the early morning hours of December 12, 2022, D.E. went to a club to see a friend where she consumed "A lot. I don't know. If I had to say, I would say, like, like half a bottle of alcohol . . . and then I was still drinking shots, probably like five or six shots in the section with the basketball players. We drank a lot." Ultimately, she took an Uber to the Airbnb where they were staying and she and Wilson talked and they were drinking. D.E. claims she then fell asleep on the couch and at some point while she was in and out of sleep, D.E. realized Wilson was on top of her and penetrating her vagina. At that point, D.E. grabbed her phone and began recording Wilson, threw liquids at him and eventually she called the police. Wilson claims after D.E. came home from the club she gave him a massage and the two engaged in consensual sexual acts that did not include penetration. He then fell asleep on the couch and was awakened when D.E. was throwing liquids on him and accusing him of raping her. The police arrived at the property, questioned both parties and arrested Wilson.

{¶ 3} On December 20, 2022, Wilson was indicted by a grand jury for one count of rape of a substantially impaired victim, D.E., in violation of R.C. 2907.02(A)(1)(c).

{¶ 4} On February 24, 2025, a jury trial commenced. The issue at trial was consent, as it was undisputed that a sexual act occurred. The State presented

testimony from D.E., three police officers, the Sexual Assault Nurse Examiner ("SANE") nurse that examined D.E. at the hospital and a DNA analyst. Defendant testified during his case-in-chief.

{¶ 5} The defendant was found guilty as indicted. Wilson was sentenced to an aggregate term of 10-15 years in prison.

{¶ 6} Wilson appeals raising two assignments of error for our review:

### Assignment of Error One

The Appellant's rights to due process and a fair trial were violated when, during cross-examination of the Appellant, direct examination of a state's witness, and in closing argument, the prosecution used Appellant's arrest and post-arrest, post-miranda silence to impeach the Appellant's testimony.

### Assignment of Error Two

The trial court violated the Appellant's rights to due process and a fair trial when it precluded relevant evidence from being properly presented to the jury.

### Wilson's First Assignment of Error

{¶ 7} In his first assignment of error, Wilson alleges the prosecutor engaged in misconduct by making improper comments in three specific incidents during the trial on Wilson's Fifth Amendment right to remain silent: during the direct examination of City of Cleveland Police Officer David Borden ("Borden"), during the cross-examination of Wilson and during the State's closing argument. We address these statements out of order, beginning with the prosecutor's questions to Wilson during cross-examination.

{¶ 8} "The Fifth Amendment to the United States Constitution provides that no person 'shall be compelled in any criminal case to be a witness against himself. This provision applies to the states through the Fourteenth Amendment.'" *State v. Nieves*, 2022-Ohio-3040, ¶ 21 (8th Dist.), quoting *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). As stated in *Nieves*:

> In *Miranda v. Arizona*, 384 U.S. 436, (1966), the United States Supreme Court held that statements by defendants obtained in response to questioning by law enforcement officers while the defendants are in custody are presumed involuntary, and therefore inadmissible, unless proper procedural safeguards have been taken to protect the privilege against self-incrimination. *Id.* at 478-479. The court detailed those procedural safeguards in the *Miranda* warnings, which include a warning that the defendant has the right to remain silent.

{¶ 9} The U.S. Supreme Court found in *Doyle v. Ohio*, 426 U.S. 610 (1976), that the State's use of a defendant's post-*Miranda* silence to impeach his or her trial testimony violates the Due Process Clause of the Fourteenth Amendment. Subsequently, the U.S. Supreme Court found that when the record does not indicate that the defendant had "received any *Miranda* warnings during the period in which he remained silent immediately after his arrest[,]" it was not a violation of due process for the State to cross-examine the defendant as to his post-arrest silence when the defendant chooses to take the stand. *Fletcher v. Weir*, 455 U.S. 603, 605, 607 (1982). "The Ohio Supreme Court recognized *Fletcher's* holding that a defendant's post-arrest, pre-*Miranda* silence could be used to impeach his version of events if he took the stand and testified in *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, 807 N.E.2d 335, ¶ 23." *Nieves* at ¶ 31.

{¶ 10} The Ohio Supreme Court held in *State v. Leach* "that use of a defendant's prearrest silence as substantive evidence of guilt violates the Fifth Amendment privilege against self-incrimination." *State v. Leach*, 2004-Ohio-2147, ¶ 38; *accord Combs v. Coyle*, 205 F.3d 269, 285 (6th Cir. 2000).

{¶ 11} We note that, while no party disputes that Wilson, when questioned by the police in the early morning of December 12, 2022, was in custody, there appears to be a dispute as to whether he had been provided his *Miranda* rights or had been arrested when talking with the police. In Wilson's brief he argues the prosecution used his silence "at the time of his arrest and after his *Miranda* rights had been read to challenge [his] testimony." The State argues that when Wilson was talking to the police it was prior to any *Miranda* warnings being given.

{¶ 12} Upon review of the record, we find no evidence as to when Wilson was read his *Miranda* rights. Pursuant to Borden's testimony the statements Wilson made to the police and about which he was questioned under cross-examination were made prior to his official arrest by Borden. We believe *Leach* applies to this situation as the statements were made prearrest. Wilson's prearrest silence cannot be used as substantive evidence of guilt without violating his Fifth Amendment right. *Leach* at ¶ 38.

{¶ 13} Wilson draws our attention to the following questions asked by the prosecutor during cross-examination:

> Q. So when you're talking to the police on the early morning of December 12, 2022, you never mentioned to them that you previously had sex with her, right?

A. They never asked me.

Q. Well, they asked you what your relationship is to her, right?

A. Possibly, yes.

Q. And do you recall when they asked what that relationship was you said that you were homies?

A. That's true.

. . .

Q. But you never said, Hey, we've had a prior sexual relationship before?

A. I did not.

Q. So we don't tell that to the police. You also testified that D.E. offered to give you a message [sic] when she got back from the club that night?

A. Yes, ma'am.

Q. This is the first time that we've heard that, correct?

DEFENSE COUNSEL: Objection.

PROSECUTOR:

Q. You never told the police that?

THE COURT: Overruled.

A. Well, the police said I have the right to remain silent, so I don't have to say anything.

PROSECUTOR:

Q. That is absolutely correct. You do have the right to remain silent and you absolutely have the right to exercise that. But you were talking to the police that night, and they were asking you questions and you were responding to those questions, correct?

A. Yes.

Q. So that's what I'm talking about, what your responses were. So you never told them anything about D.E. and you engaging in a massage?

A. No.

Q. You never told them, Hey, I had a condom on, right?

A. Why would I say that?

Q. Well, your defense attorney just asked you questions about how you rode all the way to the police station with a condom on?

A. They never asked.

. . .

Q. You never mentioned that to the police?

A. Once again, why would I offer?

. . .

Q. And you never mentioned to the police, Hey, that we were fooling around when the police said, Why would she be alleging that you raped her, you never said, Hey, we were fooling around, I don't know why she would be saying that?

A. Once again, it was not for me to tell them anything.

Q. And that's the third time that we heard that today in front of the jury?

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

. . .

Q. And you never once, when the police were asking you questions about what happened that night, you didn't tell them that you fell asleep during any sexual encounter?

A. I fell asleep right then. I told them I was woken up by water on my face which is true.

. . .

Q. But when the police were asking you questions about why she would be making these statements, you did not tell them that any sexual encounter occurred at all?

DEFENSE COUNSEL: Objection.

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

A. They didn't ask me.

{¶ 14} "A prosecutor cannot critically comment on a defendant's exercise of his right to remain silent." *State v. Belcher*, 2013-Ohio-3142, ¶ 30 (8th Dist.), citing *State v. Hough*, 2011-Ohio-2656, ¶ 7 (8th Dist.). "The test regarding prosecutorial misconduct is whether the actions or remarks were improper, and, if so, whether they prejudicially affected the substantial rights of the defendant." *Hough* at ¶ 7, citing *State v. Smith*, 14 Ohio St.3d 13, 14 (1984). This "'must be considered in the light of the whole case.'" *Id.*, quoting *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984). "A prosecutor may strike hard blows, but he [or she] may not strike foul ones[,]" which include the defendant's exercise of his or her right to remain silent. *Id.*, citing *Berger v. United States*, 295 U.S. 78, 88 (1935).

> Any improper actions or comments by a prosecutor should be examined by four factors: (1) the likelihood that the remarks tended to mislead the jury or prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) whether the remarks were deliberately or accidently made; and (4) the total strength of the evidence against the defendant.

*Id.*, citing *Bates v. Bell*, 402 F.3d 635, 647 (6th Cir. 2005).

{¶ 15} "If we conclude that the remarks were improper, we next ask whether the remarks prejudicially affected the defendant's substantial rights such that the

defendant's trial was unfair." *Belcher* at ¶ 29, citing *State v. Powell*, 2012-Ohio-2577, ¶ 149; *see also Powell* at ¶ 162 (finding prosecutor's improper argument constituted harmless error beyond a reasonable doubt); *State v. Thompson,* 33 Ohio St.3d 1, 4 (1987) (acknowledging that a violation of a defendant's constitutional right against self-incrimination is subject to harmless-error review). "[I]f it is 'clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would have found the defendant guilty,' then the defendant's conviction need not be reversed." *State v. Thompson*, 33 Ohio St.3d 1, 4 (1987), quoting *State v. Smith*, 14 Ohio St.3d 13, 15, (1984). This requires us to examine the offending comment in the broader context of the entire case and "our inquiry is guided by concern for the fairness of the trial, not the culpability of the prosecutor." (Cleaned up.) *Belcher* at ¶ 29. In other words, our task is to determine if any error found is harmless or prejudicial.

{¶ 16} There were objections to only three of these questions asked by the prosecutor. No continuing objection was made by defense counsel. Failure to object waives all but plain error. *Nieves*, 2022-Ohio-3040, at ¶ 28. "An alleged error is plain error only if the error is 'obvious,' and 'but for the error, the outcome of the trial clearly would have been otherwise.'" *State v. Price*, 2013-Ohio-1542, ¶ 8 (8th Dist.), citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph two of the syllabus. "We take notice of 'plain error' with the 'utmost caution, under exceptional circumstances and only to prevent a

manifest miscarriage of justice.'"  *Id.*, quoting *Long* at paragraph three of the syllabus.

{¶ 17} As such, we review the three objected-to questions under the prosecutorial misconduct standard and the remaining questions under the plain-error standard.

{¶ 18} The first question from the prosecutor to which there was an objection was, "This is the first time that we've heard that, correct?"  Wilson did not answer the question before the prosecutor asked another question, which he also did answer.  This question concerned the fact that Wilson never told the police he had a prior sexual relationship with D.E. and it was only during the trial that Wilson provided that information.  The second objected-to question by the prosecutor was, "And that's the third time that we heard that today in front of the jury?"  Based on the preceding questions and answers this appears to be in reference to the fact that this was the third time that Wilson said it was not for him to tell the police anything.  Wilson did not answer this question because there was a side bar after the objection and the prosecutor then asked another question.  The last objected-to question asked by the prosecutor was, "But when the police were asking you questions about why she would be making these statements, you did not tell them that any sexual encounter occurred at all?"  Wilson answered with, "They didn't ask me."  All three statements concern Wilson's prearrest silence.

{¶ 19} Here, all three questions by the prosecutor clearly commented on Wilson's exercise of his right to remain silent.  Examining the four factors for

prosecutorial misconduct we find that there is some likelihood that the remarks tended to prejudice Wilson because the jury could infer guilt from Wilson's silence. While the objected-to remarks regarding his prearrest silence to the police were isolated, the remarks could be considered extensive when factoring in the unobjected-to questions noted above regarding his prearrest silence. There is no indication the remarks were accidental, so we assume they were deliberate. Last, this is a he-said-she-said rape allegation as to whether there was a consensual sexual act between Wilson and D.E., so Wilson's testimony and statements are important. However, we note that there was additional evidence outside D.E.'s testimony, including that of a SANE nurse and a DNA analyst. Based on the foregoing, we agree with Wilson that these remarks on his prearrest silence were improper.

{¶ 20} We must then look to see whether the remarks prejudicially affected Wilson's substantial rights such that his trial was unfair. *Belcher*, 2013-Ohio-3142, at ¶ 29. Looking at these offending remarks in the broader context of the entire case we cannot say that Wilson's trial was unfair. There is no evidence in the record that these questions would have overcome the testimony from D.E., Borden, the SANE nurse, the DNA analyst or evidence via photographs and videos. Furthermore, it is not clear, beyond a reasonable doubt that, absent these questions, the jury would have found Wilson not guilty. As such, we find that the improper remarks did not prejudicially affect Wilson's substantial rights and that his trial was fair.

{¶ 21} Now we return to the remaining questions by the prosecutor to which Wilson failed during his cross-examination. Again, these questions are reviewed

under the plain-error standard. Upon review of the questions, we find that the prosecutor did ask Wilson several questions outside the ones objected to that were detailed above regarding why he did not tell the police he had prior sexual relations with D.E. or that D.E. had given him a massage that evening prior to the alleged rape, essentially commenting on his prearrest silence.

{¶ 22} Assuming without deciding that any of these statements were obvious errors, we cannot say, based on our analysis above, that the outcome of the trial clearly would have been different without these statements, and this is not one of those exceptional circumstances nor is a reversal necessary to prevent a manifest miscarriage of justice. *Price*, 2013-Ohio-1542, at ¶ 8, citing *Barnes*, 94 Ohio St.3d at 27, quoting *Long*, 53 Ohio St.2d 91, paragraph two of the syllabus. As such any alleged errors here do not qualify as plain errors.

{¶ 23} Next, we turn to the remaining statements at issue under this assignment of error which occurred during the direct examination of Borden and during the State's closing argument. During Borden's direct examination, the following exchange occurred between the prosecutor and the officer:

Q. Did you have an opportunity to ask him for an explanation of what happened?

A. I did.

Q. And did you – do you know if you asked him while you were on the scene that night, do you know how many times you asked him that question?

A. I asked him several times for an explanation.

Q. And did he give you an explanation?

A. He did not.

. . .

Q. When you were asking him these questions was he engaged? Was he speaking with you?

A. He was.

During the State's closing argument, the prosecutor made the following comment:

> Now the other thing that I want to address is defense counsel says, oh, how dare the State make a point that the defendant exercised his right not to talk to the police. That is not evidence. What is in evidence is that the police were asking him questions, and he engaged. He responded with what he wanted the narrative to be at that time.
>
> And I would argue that the reason he didn't tell them anything about any sexual encounter that night; no massage, no massage, — no — he doesn't tell them anything about why he would have a condom on his penis. Because he doesn't know that [D.E.] has that video when he talks to the police.
>
> Now after sitting through all of the evidence in this case and seeing what the evidence is, the DNA, the video, now he's got to explain it all.

{¶ 24} There were no objections to these questions and comments by the prosecutor and, therefore, Wilson has waived all but plain error. *Price* at ¶ 7 (Failure to object to a detective's testimony reciting a defendant's statements waives all but plain error.); *Powell*, 2012-Ohio-2577, at ¶ 151, citing *State v. Childs*, 14 Ohio St.2d 56 (1968), paragraph three of the syllabus (Trial counsel's failure to object to a prosecutor's alleged improper comments during closing arguments waives all but plain error.).

{¶ 25} Again, assuming without deciding that any of these statements were obvious errors, we cannot say that the outcome of the trial clearly would have been

different without these statements, and this is not one of those exceptional circumstances nor is reversal necessary to prevent a manifest miscarriage of justice. These alleged errors do not qualify as plain errors.

{¶ 26} Wilson's first assignment of error is overruled.

**Wilson's Second Assignment of Error**

{¶ 27} For Wilson's second assignment of error, he alleges that his rights to due process and a fair trial were violated when the trial court precluded relevant evidence from being presented to the jury. Specifically, Wilson argues the court erred by excluding Defendant's Exhibits N, AAA, B and C, thus "hamstringing" his defense.

{¶ 28} At a November 27, 2024 hearing pursuant to R.C. 2907.02(E), which is Ohio's Rape Shield statute, Wilson presented numerous exhibits to the court to get preliminary rulings regarding their admissibility at the upcoming trial. Relevant to this appeal, Wilson presented Defendant's Exhibits N, AAA, B and C. Exhibit N is a screenshot of a direct message from D.E. to the rapper Christopher Bridges a.k.a. Ludacris ("Bridges"), a friend of Wilson's, on June 28, 2023, via Instagram. The message is as follows:

> I still have to deal with this mentally & emotionally. Fate has messaged me on Instagram multiple times saying he "misses" me, he's tried calling me, & he's subscribed on my onlyfans, sending me tips continuously. This is a serious matter, I AM SERIOUS, & he's trying to manipulate the situation. He's digging himself a deeper whole [sic].

Either he can email me or we can go to trial. I don't care at this point.
He deserves to go to prison.[1]

The court ruled preliminary that Exhibit N appeared irrelevant to the alleged rape.

{¶ 29} Exhibit AAA is a screenshot of a message from June 26, 2023, on the adult website OnlyFans, that was from D.E. to Wilson. The message says, "I don't discuss business over OnlyFans, can you consult with me over email please?" The court deferred ruling on this exhibit until trial.

{¶ 30} Last, Exhibits B and C were presented to the court, which are two clips from a Ring security camera showing footage of D.E. entering and leaving Wilson's mother's house on the early morning of November 15, 2022. The court ruled the video footage was not relevant to the allegation of rape on December 12, 2022 and the issue of whether D.E. stayed at Wilson's house on November 15, 2022, was not in dispute but stated it may become relevant for impeachment at trial.

{¶ 31} During a pretrial hearing prior to impaneling the jury, the admissibility of the three exhibits above was revisited by the court. Regarding Exhibit N, the court ruled that the defense could ask D.E. about the direct message she sent to Bridges and could use the exhibits to impeach D.E. if her testimony was materially inconsistent. Regarding Exhibit AAA, the court ruled that the jury should not hear anything about OnlyFans but that the message could be used if defense counsel could show it is relevant, probative, or an inconsistent prior statement and that the court would consider ruling on it during trial. Regarding Exhibits B and C,

---

[1] Wilson's stage name is Lil' Fate.

the court also reserved ruling on admissibility until presented at trial depending on whether D.E.'s testimony was materially inconsistent.

{¶ 32} During D.E.'s testimony she testified consistently with Exhibit N, that she had reached out to Bridges and told him to tell Wilson to email her. Wilson was able to cross-examine her regarding this message, such that Wilson never used Exhibit N to impeach her testimony. Similarly, D.E. testified consistently with Exhibit AAA and Wilson cross-examined her regarding the OnlyFans message, so the exhibit was never used to impeach her testimony. Last, Exhibits B and C were not used at trial because D.E. testified consistently with the video footage that she arrived at Wilson's house in the very early morning of November 15, 2022, and left that same morning several hours later and Wilson cross-examined her on this topic.

{¶ 33} We note that Wilson did not attempt to admit into evidence any of these demonstrative exhibits at the end of trial and they were not proffered, which makes it difficult for this court to review. However, Wilson has transcribed Exhibits N and AAA, which were not disputed by the State, and sufficiently described the contents of Exhibits B and C for our review.

{¶ 34} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Yapp*, 2015-Ohio-1654, ¶ 22 (8th Dist.), quoting *State v. Sage*, 31 Ohio St.3d 173 (1987), paragraph two of the syllabus. We review a trial court's decision regarding the admission of evidence for an abuse of discretion. (Cleaned up.) *Id.* An abuse of discretion occurs when a court exercises

its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 35} Evid.R. 401 states that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Irrelevant evidence is not admissible at trial. Evid.R. 402.

{¶ 36} Wilson was convicted of violating R.C. 2907.02(A)(1)(c), substantial impairment rape, which

> occurs when a person "engage[s] in sexual conduct with another" whose "ability to resist or consent is substantially impaired because of a mental or physical condition . . . and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition . . . ." R.C. 2907.02(A)(1)(c).

*State v. Morgan*, 2025-Ohio-5510, ¶ 50 (8th Dist.).

{¶ 37} We cannot say, upon review of the exhibits, that the trial court abused its discretion in finding them irrelevant and excluding them at trial. None of the exhibits have any temporal proximity to the day of the alleged offense. Exhibits N and AAA are from June 2023, seven months after the incident in question and Exhibits B and C are from November 15, 2022, one month before the incident. Furthermore, none of the exhibits make the existence of any fact of consequence more or less probable. None of the exhibits go to the issue of consent on December 12, 2022, which was the material fact at issue in this case, since it was not disputed that sexual conduct occurred. Last, the exclusion was not error because

the trial court properly permitted Wilson to cross-examine D.E. regarding the contents of each exhibit and merely excluded the exhibits themselves from being introduced, so the jury was aware of their existence and what they substantially stated.

{¶ 38} Wilson argued these exhibits were evidence that the alleged rape was "faked" and that D.E. was trying to shakedown Wilson for money for her to drop the rape allegation. We disagree. The exhibits do not reflect D.E. asking Wilson for any kind of financial compensation and there was no evidence that D.E. ever received any kind of financial compensation by Wilson to drop the rape allegations. These exhibits do not support such an inference.

{¶ 39} As such, we find the trial court did not abuse its discretion in excluding these irrelevant exhibits.

{¶ 40} Wilson's second assignment of error is overruled.

{¶ 41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
EILEEN A. GALLAGHER, JUDGE

SEAN C. GALLAGHER, P.J., CONCURS;
DEENA R. CALABRESE, J., CONCURS IN JUDGMENT ONLY