[Cite as *State v. Price*, 2014-Ohio-2047.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA


JOURNAL ENTRY AND OPINION
**No. 99058**


## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHRISTIAN PRICE

DEFENDANT-APPELLANT


---

**JUDGMENT:**
APPLICATION DENIED

---


Cuyahoga County Court of Common Pleas
Case No. CR-12-558932-A
Application for Reopening
Motion No. 470587


**RELEASE DATE:**   May 13, 2014

**ATTORNEYS FOR APPELLANT**

Timothy Young
Ohio Public Defender
By:     Carrie Wood
Assistant State Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio 43215


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:     Daniel T. Van
Assistant County Prosecutor
8th Floor Justice Center
1200 Ontario Street
Cleveland, Ohio   44113

FRANK D. CELEBREZZE, JR., P.J.:

**{¶1}** On December 10, 2013, the applicant, Christian Price, pursuant to App.R. 26(B) and *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992), applied to reopen this court's judgment in *State v. Price*, 8th Dist. Cuyahoga No. 99058, 2013-Ohio-3912 ("*Price II*"), which affirmed his conviction and sentence for kidnapping with sexual motivation and violent sexual predator specifications. Price argues that his appellate counsel was ineffective for (1) not asking this court to take judicial notice pursuant to Evid.R. 201 of *State v. Price,* 8th Dist. Cuyahoga No. 98410, 2013-Ohio-1542 ("*Price I*"); (2) not arguing that the trial court erred in using an acquitted offense to find that Price was a sexually violent predator; and (3) not arguing ineffective assistance of trial counsel for not objecting to the trial court's use of the evidence of rape, for which a jury had found Price not guilty. On February 10, 2014, the state of Ohio filed its brief in opposition. For the following reasons, this court denies the application.

**{¶2}** In December 2011, the victim was an 18-year-old female, high school senior. The trial testimony was that while working at a McDonald's drive-through window in early December, she gave her telephone number to whom she thought was a young man in the hope of developing a friendship. The man told her his name was Christian. Subsequently, she and Christian exchanged text messages and had a lengthy telephone conversation on December 26. The next day, Christian invited her to stop at his home before starting her 3:00 p.m. shift. She arrived at his house at approximately 2:50 p.m. and intended to stay just long enough to say "hi." The door was open, and Christian

yelled for her to come upstairs to his bedroom. When she stepped into that room, Christian's appearance surprised her; he was older than she thought and was not the young man to whom she believed she had given her number. She testified that Christian immediately grabbed her, pinned her to his bed, and raped her. She told him "no" and that she did not "want this." The rape lasted just a few minutes, and when Christian got up, the high school senior was able to run from the house to her car, where her younger sister was waiting.

{¶3} At 3:01 p.m., Christian began a series of text exchanges in which he asked the senior whether she liked it. The replies basically said, "yes, but that he was too old for her." The senior testified that she gave her cell phone to her younger sister who made the replies, but the younger sister did not recall doing so, except maybe for the last text. After telling her sister and a friend, and her mother learning about the incident, the senior made a police report.

{¶4} On February 1, 2012, the grand jury indicted Christian Price on one count of rape with a sexually violent predator specification, one count of kidnapping for the purpose of engaging in sexual activity with sexual motivation and sexually violent predator specifications, and one count of kidnapping for the purpose of terrorizing or inflicting serious physical harm, also with a sexual motivation and a sexually violent predator specifications.[1] Before trial in September 2012, Price waived his right to a trial

---

[1] The grand jury also indicted Price for telephone harassment, but the court granted Price's motion for a directed verdict on that charge.

by jury only on the sexually violent predator specification; that would be tried to the judge.[2]

{¶5} During deliberations, the judge gave the *Howard* charge when the jury said that it was deadlocked. Later a juror informed the court that he had an important business trip the next day and asked the judge what his options were. In response, the judge instructed the jury as follows: "Each jury member is a member of the deliberating jury. Each member is expected to stay with deliberations until the end. The court has no way of knowing when the jury will conclude its work." Later that day, the jury found Price not guilty of rape and not guilty of kidnapping for the purpose of terrorizing or inflicting serious physical harm. However, it found Price guilty of kidnapping for the purpose of engaging in sexual activity and of the sexual motivation specification.

{¶6} The court then tried the sexually violent predator specification . R.C. 2971.01(H)(2) provides in pertinent part that any of six listed "factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses." The factors relevant to this case were (a) the person has been convicted two or more times in separate criminal actions of a sexually oriented offense; (c) available information or evidence suggests that the person chronically commits offenses with sexual motivation; and (f) any other relevant evidence. The court considered that Price was found guilty in a previous case of rape, and also

---

[2] In another case, *State v. Price*, Cuyahoga C.P. No. CR-11-549930-A, in May 2012, a jury convicted Price of rape, kidnapping, and telephone harassment ("*Price I*").

considered the evidence in the present case. Although the jury had found Price not guilty of rape, the trial judge concluded that the evidence proved beyond a reasonable doubt that Price had raped the high school senior. Thus, the judge found him guilty of the sexually violent predator specification. Pursuant to R.C. 2971.03(A)(3)(b)(ii), the judge imposed the required sentence of ten years to life; being found guilty of the violent sexual predator specification carried the "life tail."

{¶7} In the January 16, 2013 brief, appellate counsel argued seven assignments of error, including that the kidnapping conviction was against the manifest weight of the evidence, that the trial judge erred in refusing to give a "safe release" instruction, that trial counsel was ineffective for failing to ask for a "safe release" instruction and failing to argue the kidnapping charge, that the trial judge erred in giving the *Howard* charge and ignoring the juror's plea of an urgent business meeting, and that the sexually violent predator specification conviction was against the manifest weight of the evidence. Specifically, counsel argued: "While the trial court may have been technically correct when it asserted that it is not 'bound' by the jury's verdict of not guilty on the rape charge, the trial court certainly is constrained by the State's failure to prove that charge beyond a reasonable doubt." (Jan. 16, 2013 brief, pg. 28.)

{¶8} On April 13, 2013, in *Price I*, this court reversed his convictions and remanded for a new trial because the state committed plain error by violating Price's right to remain silent. On April 24, 2013, appellate counsel filed a supplemental brief in the present case, adding another assignment of error: The reversal in *Price I* requires

vacating the sexually violent predator specification because the trial judge relied on *Price I* to find Price guilty of that specification. Counsel attached a copy of the *Price I* opinion to the brief.

{¶9} This court affirmed Price's conviction for kidnapping with a sexually violent predator specification. In rejecting the argument that the reversal in *Price I* requires reversal of the sexually violent predator specification, the court first noted that the reversal was technically outside the record. It then made a further prudential judgment that the argument is premature until and if Price is found not guilty of rape and kidnapping in the other case. Assuming that happens, Price's better remedy would be to file a postconviction relief petition instead of this court reversing the sexually violent predator specification and awaiting the outcome of the other case. The court further noted res judicata and principles of untimeliness should not bar further review if Price is found not guilty of the sexually oriented offenses in *Price I.* This court also ruled that in considering Price's other rape conviction and the evidence in the present case, the trial judge did not lose her way in determining that Price was a sexually violent predator.

{¶10} Price now argues that his appellate counsel was ineffective. In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989); and *State v. Reed*, 74 Ohio St.3d 534, 1996-Ohio-21, 660 N.E.2d 456.

{¶11} In *Strickland,* the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689.

{¶12} Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751-752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective

advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 672 N.E.2d 638 (1996).

{¶13} Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error, there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

{¶14} Price first argues that his appellate counsel should have invoked Evid.R. 201(D), Judicial Notice, to preclude any record problems with the opinion from *Price I*. Specifically, Subsection (D) provides: "A court shall take judicial notice if requested by a party and supplied with the necessary information." Thus, Price insists the mandatory nature of this subsection would have prevented this court from avoiding the issue because the matter was not technically before it. However, this does not establish prejudice. Assuming arguendo that this court took judicial notice of *Price I*, it would not have changed the second line of reasoning, that the better, more prudent course of action would be to await the outcome of the second trial and then, if appropriate, file a postconviction relief petition. The result would not have been different.

{¶15} Price's second argument is that the trial judge committed plain error when it used an acquitted offense to find that he was a sexually violent predator. Essentially, the

argument is that the trial judge found Price guilty of rape, despite the jury's finding of not guilty, and then imposed the "life tail" as punishment for that offense through the devise of the sexually violent predator specification. In doing so, the trial court violated the Double Jeopardy Clauses of the Ohio and United States constitutions. Price's third argument is that his trial counsel was ineffective for not objecting to the judge's use of the rape evidence to rule that he is a sexually violent predator.

{¶16} These arguments are unpersuasive. First, R.C. 2971.01(H)(2)(c) and (f) explicitly permit the judge to consider available information or evidence that suggests the person chronically commits offenses with a sexual motivation and any other relevant evidence. These provisions allowed the judge to consider the evidence presented during the trial to discern whether Price is a sexually violent predator. The knowledge of these provisions explains why trial defense counsel did not object to the trial judge's use of the evidence of Price raping the high school senior. (Tr. 712-726.)

{¶17} Moreover, the Supreme Court of Ohio has held that the counts of an indictment "are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." The court continued: "Double jeopardy and collateral estoppel do not apply where the inconsistency in the responses arise out of inconsistent responses to different counts, not out of inconsistent responses to the same count." *State v. Lovejoy,* 79 Ohio St.3d 440, 683 N.E.2d 1112 (1997), paragraphs one and two of the syllabus.

**{¶18}** In the present case, the inconsistency, if any, arises from the two different counts, (1) rape and (2) kidnapping with the sexually violent predator specification. Thus, double jeopardy did not prohibit the trial judge from finding Price to be a sexually violent predator based on the evidence she heard at trial. Appellate counsel, in the exercise of professional judgment, could decline to argue these last two contentions.

**{¶19}** Accordingly, the court denies the application to reopen.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

MARY EILEEN KILBANE, J., CONCURS;
TIM McCORMACK, J., CONCURS IN JUDGMENT ONLY