[Cite as *State v. Morgan*, 2025-Ohio-5510.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                    :

    Plaintiff-Appellee,           :

                                 No. 114650

    v.                            :

SETH J. MORGAN,                   :

    Defendant-Appellant.          :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 11, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-687613-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Steven Szelagiewicz, Assistant Prosecuting Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and Michael V. Wilhelm, Assistant Public Defender, *for appellant*.

LISA B. FORBES, J.:

{¶ 1} Seth J. Morgan ("Morgan" or "Defendant") appeals his conviction for rape. For the reasons below, we affirm.

## I.    Facts and Procedural History

### A. Before Trial

{¶ 2}    On December 14, 2023, Morgan was indicted on four counts of rape stemming from two incidents, each involving a different victim.  Regarding events that occurred on or about November 8, 2023, involving victim L.D., Morgan was indicted on Count 1, substantial impairment rape, a first-degree felony in violation of R.C. 2907.02(A)(1)(c) and Count 2, forcible rape, a first-degree felony in violation of R.C. 2907.02(A)(2).  In connection with events that occurred on or about July 8, 2022, involving victim D.S., Morgan was indicted on Count 3, substantial impairment rape, a first-degree felony in violation of R.C. 2907.02(A)(1)(c) and Count 4, forcible rape, a first-degree felony in violation of R.C. 2907.02(A)(2).  All charges carried sexually violent predator specifications under R.C. 2941.148(A).

{¶ 3}    On July 10, 2024, Morgan filed a motion to sever and try separately Counts 1 and 2 (related to L.D.) from Counts 3 and 4 (related to D.S.).  The court denied this motion by journal entry dated August 14, 2024.

{¶ 4}    The case proceeded to a jury trial on November 6, 2024, with all specifications tried to the bench.  The parties elicited the following testimony pertinent to this appeal.

### B. Trial Testimony

#### 1.  L.D.

{¶ 5}    The State called L.D., who testified that Morgan raped her on November 8, 2023.  L.D. was a math teacher at the school where Morgan worked as

a "dean." She "got along with" Morgan and considered him a friend. Morgan had asked L.D. about dating, but she declined because they worked together.

{¶ 6} On Wednesdays, L.D., Morgan, Khemet Burnett ("Burnett") and "[o]ther teachers in middle school would meet at [a] bar and have wings [and] drinks." On the day of the alleged rape, they and other coworkers left the school around 4:00 p.m., traveling to Old World Tavern. L.D. drank one whole Long Island iced tea and half of another. She did not eat. The group relocated to Burnett's house around 6:00 p.m. There, L.D. drank two shots of tequila and smoked marijuana.

{¶ 7} Around 9:00 p.m., L.D. and Morgan drove Burnett's car to a restaurant. "[W]e went to go get food because I also realized I didn't get wings while we was at this bar." L.D. explained, "I was drunk." L.D. and Morgan returned to Burnett's house. L.D. fell asleep on a couch while watching television. She awoke to Morgan leading her to a bedroom where they had slept after drinking on the previous Friday. L.D. laid down and fell asleep.

{¶ 8} L.D. eventually awoke again, feeling a "sharp pain" in her vagina. "[M]y body is rocking" and "he's in me." "I just pushed away and got off the bed." L.D.'s underwear was at her ankles, and her dress was around her waist.

{¶ 9} L.D. had expected Burnett to drive her to her home, but he was asleep. She did not have money for an Uber. She asked Morgan to take her home, which he did. During the ride home, L.D. lost consciousness several times. Once she was inside her apartment, L.D. texted Morgan that she was home. He responded, "nighty night," and she hearted the message.

{¶ 10} The next morning, L.D. showered and went to work. She tried to "act normal." She explained, "I wanted to tell, but I didn't think it would help me" and "I thought I would lose my job." Eventually, L.D. told the school's principal that Morgan had raped her. The principal told L.D. to contact the police. The following Sunday, L.D. filed a police report.

{¶ 11} L.D. spoke with Morgan about the alleged rape. Without Morgan's knowledge, L.D. recorded their conversation using a phone located in her purse. The State played this recording for the jury. L.D. identified a male voice on the recording as Morgan's. On the recording, Morgan acknowledged that he and L.D. had sex but maintained that she consented. Morgan and L.D. discussed their relationship and the events that led to the alleged rape.

### 2. Detective Earl Pierson

{¶ 12} State's witness Detective Earl Pierson ("Det. Pierson") testified that he worked for the City of Cleveland Heights and interviewed L.D. about the alleged rape. He identified a Cleveland Heights residence associated with Burnett as the location of the alleged rape and identified Morgan as a suspect. Det. Pierson decided he did not have enough information to arrest Morgan and suggested that L.D. attempt to record Morgan discussing what had happened.

### 3. D.S.

{¶ 13} State's witness D.S. testified that Morgan raped her on July 8, 2022. D.S. was a school bus driver who met Morgan while driving students to the school where he worked. D.S. "gave him . . . [her] business card because I make clothes,"

including custom streetwear and hats. "[W]e . . . didn't . . . talk about anything other than . . . my business." D.S. eventually sold Morgan a hat.

{¶ 14} D.S. met Morgan at INC, a bar, on July 7, 2022, to discuss selling him more clothes. She arrived between 5:00 and 6:30 p.m. D.S. testified that she joined Morgan inside the bar and that her friend, Miranda Singh ("Singh"), eventually joined them. Together, they drank at INC and at another bar, Five Points, which was across the street from INC. Other friends of Morgan were present. D.S. testified that, over the course of the night, she had "[t]wo drinks and one shot." Morgan purchased at least one of D.S.'s drinks. D.S. drank water and ate french fries.

{¶ 15} Eventually, D.S. felt sluggish, drowsy, hot, nauseated, and sick. She testified, "I was throwing up for maybe 20 minutes." "[W]hen I left the second bar, that's when I was . . . puking . . . for a long time. . . ." "[W]e were next to my car and I just remember . . . being sick." She further testified, "It was me, Miranda, and, I believe, that [Morgan] was there, too."

{¶ 16} D.S. testified that, between 11:00 p.m. and midnight, Singh left and Morgan drove D.S. in her car to his home. D.S. fell asleep on a couch. She awoke the next morning in a bed, naked. She felt a sticky substance on her legs. "I grabbed my stuff and left." She was scared, confused, and believed Morgan "took advantage of" her. D.S. admitted that she had no memory of any sexual contact with Morgan.

{¶ 17} D.S. returned to the bar to look for her ID, which was missing. She called Singh. She went to the hospital, where a rape kit was administered. D.S. initially did not speak with the police because she was confused and did not want to

be involved in an investigation. She changed her mind because "it's not fair when people take advantage of other people . . . ."

{¶ 18} D.S. testified that she has not dated men since middle school and had been in a relationship with a woman for three years.

### 4. Miranda Singh

{¶ 19} State's witness Singh testified that she was friends with D.S. They met in elementary school, attended high school together, and had reconnected shortly before the alleged rape. Singh joined D.S. in the parking lot of INC on July 7, 2022. Sitting in D.S.'s car, they had several drinks from a bottle of liquor. They entered INC, joining Morgan inside. Singh and Morgan had not previously met.

{¶ 20} Singh, D.S., and Morgan drank alcohol and talked at INC. Morgan bought D.S. at least one drink. Singh testified that Morgan mainly talked to D.S. Singh denied observing any "romantic connection" between D.S. and Morgan. "D.S. was in a relationship. She had a girlfriend." The group eventually walked to Five Points. Singh did not know how many drinks they consumed, how long they stayed at either bar, or what time they left.

{¶ 21} Eventually, D.S. became "highly intoxicated." Morgan, D.S. and Singh left Five Points and returned to the INC parking lot. "[D.S] was vomiting outside the side of my passenger door and I was holding her hair back . . . [Morgan] was holding [D.S.] up. She wasn't able to hold herself up . . . her arm was around his shoulder . . . ." Morgan said that he would make sure that D.S. made it home safely. Singh then drove home.

{¶ 22} Several days later, D.S. and Singh texted about what had happened. Singh texted D.S., "You were drunk."

### 5. Angie Zimmerman

{¶ 23} State's witness Angie Zimmerman ("Zimmerman") testified that she had worked as a sexual-assault nurse examiner ("SANE nurse") at the Cleveland Clinic. D.S. was examined at the Cleveland Clinic on July 8, 2022. Zimmerman administered a rape kit, collecting D.S.'s underwear and DNA swabs of D.S.'s vagina.

### 6. Detective Joseph Edwards

{¶ 24} State's witness Detective Joseph Edwards ("Det. Edwards") testified that he worked for the Cleveland Police Department and investigated the alleged rape of D.S. Det. Edwards interviewed D.S. in early 2024, more than a year after the alleged rape occurred. He explained that delay of this length was not uncommon and that "it could take years sometimes" for rape victims to come forward. Det. Edwards testified that D.S. had not answered his initial call and that he "didn't want to come across as trying to force someone to come in and interview with us." In the months before D.S. spoke with law enforcement, Det. Edwards knew that she was working with a rape crisis center.

{¶ 25} Det. Edwards obtained screenshots of text messages between Singh and D.S. He obtained a search warrant for buccal swabs from Morgan, which he submitted to the Cuyahoga County Regional Forensic Science Laboratory for a comparison to the DNA collected in D.S.'s rape kit. The results indicated that Morgan's DNA was present in D.S.'s vagina.

{¶ 26} Det. Edwards went to both bars that D.S. and Morgan visited. He observed at least one security camera but did not obtain video recordings or pursue a warrant for them. Det. Edwards explained that, at the time, D.S. had not yet been available for an interview about the rape allegation. Det. Edwards believed that, by the time he interviewed D.S., any security footage would have been deleted. He testified that, in his experience, businesses retain security footage for one to two weeks.

### 7. Khemet Burnett

{¶ 27} Defendant called Burnett, who testified that he had worked as an "assistant vice principal" at the same school where Morgan and L.D. worked. He had been friends with Morgan for almost twenty years. He had observed Morgan and L.D. interact at school and described their behavior in that setting as "strictly professional."

{¶ 28} On the evening of the alleged rape, Burnett attended a happy hour at a bar with Morgan, L.D., and other school employees, after which they returned to Burnett's home. Burnett described Morgan and L.D. as "hugged up on each other and in each other's faces." Burnett lent Morgan his car keys and told him to "come back here . . . so we can go to work in the morning." Burnett then went to bed.

{¶ 29} Burnett briefly observed Morgan and L.D. talking during the conversation that L.D. recorded. Burnett did not know what they discussed.

{¶ 30} On November 13, 2024, the jury found Morgan not guilty regarding Counts 1 and 2 and guilty regarding Counts 3 and 4. The court found Morgan not guilty of all specifications.

**C. After Trial**

{¶ 31} On November 14, 2024, the court held a sentencing hearing. The court merged Counts 3 and 4 for purposes of sentencing, and the State elected to sentence on Count 3. The court sentenced Morgan to a prison term of five to 7.5 years. The court also advised Morgan of his duty to register as a Tier III sex offender.

{¶ 32} Morgan appealed, raising the following assignments of error:

1. The trial court erred when it denied Mr. Morgan's motion to sever the counts in his indictment.

2. The trial court erred in not holding a hearing and ordering the prosecuting attorney to deliver statements made by the defendant pursuant to Crim.R. 14.

3. The State did not present sufficient evidence to obtain a conviction depriving Mr. Morgan of his right to Due Process.

4. The trial court erred in denying Mr. Morgan's objection to the use of the word "survivor" and erred in using that word itself to refer to D.S.

## II. Law and Analysis

### A. Assignment of Error No. 1 — Denial of Morgan's Motion to Sever the Counts in his Indictment

{¶ 33} We review the court's decision not to sever the counts in Morgan's indictment for an abuse of discretion. *State v. Torres*, 66 Ohio St.2d 340, 343 (1981). An abuse of discretion occurs when a court exercises "its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority."

*Abdullah v. Johnson*, 2021-Ohio-3304, ¶ 35. An abuse of discretion "'implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" *W.A.F.P., Inc. v. Sky Fuel Inc.*, 2024-Ohio-3297, ¶ 13 (8th Dist.), quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 34} The law favors joinder of multiple offenses in a single trial if the offenses charged "are of the same or similar character." *Torres* at 343; Crim.R. 13; Crim.R. 8(A). Joinder is favored because it offers the benefits of "conserving time and expense, diminishing the inconvenience of witnesses and minimizing the possibility of incongruous results in successive trials before different juries." *Id.* Crim.R. 13 allows two different indictments to be tried together "if the offenses . . . could have been joined in a single indictment or information." Crim.R. 8(A) allows offenses to be joined in a single indictment where they "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan or are part of a course of criminal conduct."

{¶ 35} Crim.R. 14 allows a court to sever multiple offenses — try them separately — where joinder would prejudice the defendant or the State. A defendant moving to sever has the burden of providing the court sufficient information "that it can weigh the considerations favoring joinder against the defendant's right to a fair trial." *Torres* at 343. An appellant "claiming error in the trial court's refusal to allow separate trials of multiple charges has the burden of affirmatively showing that his rights were prejudiced." *Id.*

**{¶ 36}** The Ohio Supreme Court has recognized that the State may rebut a defendant's claim of prejudicial joinder by showing either 1) the evidence in the joined cases could be introduced in separate trials as "other acts" evidence under Evid.R. 404(B); or (2) by showing that the evidence as to each crime is simple and direct. *State v. Lott*, 51 Ohio St.3d 160, 163 (1990). *See also State v. T.R.*, 2024-Ohio-3010, ¶ 49 (8th Dist.).

**{¶ 37}** "Evidence is 'simple and direct' if the trier of fact is capable of segregating the proof required for each offense." *State v. Jackson*, 2024-Ohio-958, ¶ 38 (8th Dist.). "'Ohio appellate courts routinely find no prejudicial joinder where the evidence is presented in an orderly fashion as to the separate offenses or victims without significant overlap or conflation of proof.'" *Id.*, quoting *State v. Echols*, 2015-Ohio-5138, ¶ 16 (8th Dist.). "When the evidence is 'simple and direct,' an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of the crimes as other acts under Evid.R. 404(B)." *State v. Knox*, 2019-Ohio-1246, ¶ 47 (8th Dist.), quoting *Lott* at 163.

**{¶ 38}** The court did not abuse its discretion in denying Morgan's motion to sever Counts 1 and 2 (related to L.D.) from Counts 3 and 4 (related to D.S.). Morgan contends that State's counsel conflated the proof of each allegation by stating, during closing arguments, "This Defendant shows he clearly has an MO." We disagree with Morgan's assertion.

**{¶ 39}** Opening statements and closing arguments are not evidence. *Torres v. Concrete Designs, Inc.*, 2019-Ohio-1342, ¶ 18 (8th Dist.). Notwithstanding the

State's closing argument, the evidence of each allegation was simple and direct. The State presented its case in an orderly fashion, and the evidence of the two alleged rapes did not overlap significantly. The State's witnesses testified about Morgan's encounter with L.D., then about Morgan's encounter with D.S. None of the witnesses to the first alleged rape testified regarding the second. The alleged rapes occurred in different locations, in different years, and involved different people, except for Morgan. From this presentation of evidence, the jury could segregate the proof of each offense.

{¶ 40} Moreover, the jury demonstrated that it was able to distinguish between the offenses involving L.D. from those involving D.S. when it found Morgan not guilty of the offenses involving L.D. but guilty of those involving D.S.

{¶ 41} The court did not abuse its discretion by denying Morgan's motion to sever. Accordingly, assignment of error No. 1 is overruled.

**B. Assignment of Error No. 2 — the Court's Obligation Under Crim.R. 14 to Hold a Hearing and Order the State to Disclose Morgan's Prior Statements, Which the State Intended to Introduce at Trial**

{¶ 42} Morgan asserts that the court erred by denying his motion to sever without ordering the State to provide the audio statements that Morgan made to L.D., which the State intended to introduce at trial. Morgan also asserts that the court erred by not holding a hearing on his motion to sever.

{¶ 43} Crim.R. 14 states, "In ruling on a motion by a defendant for severance, the court shall order the prosecuting attorney to deliver to the court for inspection

pursuant to Rule 16(B)(1) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."

{¶ 44} Morgan contends that Crim.R. 14 can be read to require disclosure of statements made by any number of defendants. The State argues that disclosure is required only when, unlike in this case, a court is deciding whether to try separately counts against multiple codefendants.

{¶ 45} We decline to address whether the court's handling of the motion to sever violated Crim.R. 14 because Morgan has not demonstrated that it had any prejudicial effect. *See* Crim.R. 52(A) ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."). *See also State v. Harris*, 2015-Ohio-166, ¶ 37, applying Crim.R. 52(A) ("First, it must be determined whether the defendant was prejudiced by the error, i.e., whether the error had an impact on the verdict.").

{¶ 46} Even if the court had ordered the prosecution to disclose the audio and reviewed it at a hearing, denying Morgan's motion to sever would still have been within the court's discretion. The audio concerned L.D. and Morgan's recollections of the circumstances that surrounded L.D.'s alleged rape, of which Morgan was found not guilty. Morgan does not point us to any part of the audio that is pertinent to D.S. or prejudicial to his defense regarding her allegations. And as we found above, the State's presentation of evidence — including the audio at issue — was simple and direct, supporting joinder of all counts.

{¶ 47} The court committed no prejudicial error by ruling on Morgan's motion to sever without first inspecting the audio of his prior statements or holding a hearing. Accordingly, assignment of error No. 2 is overruled.

### C. Assignment of Error No. 3 — Sufficiency of the Evidence

{¶ 48} Morgan next challenges the sufficiency of the evidence in support of his conviction for substantial impairment rape under R.C. 2907.02(A)(1)(c). "A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law." *State v. Parker*, 2022-Ohio-1237, ¶ 7 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry in a sufficiency challenge is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime existed beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 49} When making a sufficiency determination, an appellate court does not review whether the State's evidence is to be believed but whether, if believed, the evidence admitted at trial supports the conviction. *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *Thompkins* at 386. Under a sufficiency challenge, witness credibility is immaterial.

{¶ 50} Substantial impairment rape occurs when a person "engage[s] in sexual conduct with another" whose "ability to resist or consent is substantially impaired because of a mental or physical condition . . . and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is

substantially impaired because of a mental or physical condition . . . ." R.C. 2907.02(A)(1)(c).

{¶ 51} The record contained evidence from which a rational trier of fact could conclude that D.S.'s ability to consent was substantially impaired. Singh testified that, before entering INC, D.S. consumed liquor from a bottle. D.S. testified that she also drank alcohol inside the bars they visited, finishing "[t]wo drinks and one shot." She then felt sluggish, drowsy, hot, nauseated, and sick. Singh and D.S. both testified that D.S. vomited in the parking lot after leaving Five Points. Per Singh, D.S. was also unable to stand on her own.

{¶ 52} The record also contained sufficient evidence that Morgan knew or had reasonable cause to believe that D.S.'s ability to resist or consent was substantially impaired. Morgan knew that D.S. was drinking alcohol at INC and Five Points. He drank with them at both bars and bought D.S. at least one drink. Morgan also observed D.S. show signs of impairment. Morgan was present in the parking lot after D.S. exited Five Points. D.S. testified that, by this point, she was "really sick." Singh described D.S. as "highly intoxicated" and testified that Morgan was "holding her up." Further, the jury could have found that, under the circumstances described above, Morgan's offer to drive D.S. home was evidence that he knew she was impaired.

{¶ 53} Sufficient evidence also supported the jury's finding that Morgan engaged in sexual conduct with D.S. "[E]vidence of slight penetration, entering the vulva or labia, is sufficient to support a rape conviction." *State v. Baldwin*, 2024-

Ohio-6177, ¶ 7 (8th Dist.). Zimmerman administered a rape kit, collecting DNA swabs of D.S.'s vagina, which were compared to Morgan's buccal swabs. The results indicated that Morgan's DNA was present in D.S.'s vagina.

{¶ 54} The record contained sufficient evidence to support Morgan's conviction. Accordingly assignment of error No. 3 is overruled.

### D. Assignment of Error No. 4 — Use of the Word "Survivor" to Describe D.S.

{¶ 55} Morgan first asserts that the court erred by denying his objection to SANE nurse Zimmerman's use of the word "survivor." He argues that he was prejudiced by Zimmerman's attempt to describe a specific victim — D.S. — as a survivor.

{¶ 56} Trial witnesses may use the word "survivor" to generically describe rape victims. *State v. Jackson*, 2023-Ohio-455, ¶ 30 (8th Dist.), citing *State v. Madden*, 2017-Ohio-8894, ¶ 32 (10th Dist.). The *Jackson* Court analogized the word "survivor" to the word "victim," which witnesses may use generically under certain circumstances. *Id.*, discussing *Madden* ("It is obvious when discussing the victims of rape generally that the term 'victim' refers to 'the complaining witness' and that such general references do not unfairly prejudice the defendant in a particular case.").

{¶ 57} In support of this assignment of error, Morgan points us to the following colloquy:

Q: And what are the duties of a sexual assault nurse examiner?

A: So we're on call. Usually the survivor when they —

Morgan's Counsel:  Your Honor, I'm going to object to survivor . . . . They're alleged victims.

The Court:  Objection overruled.

{¶ 58} The court followed *Jackson* by denying counsel's objection. Zimmerman permissibly attempted to describe what "usually" occurs during a SANE nurse's examination.  She did not refer to D.S. specifically or assert that D.S. had in fact survived a sexual assault; rather, she used the word generically.

{¶ 59} Morgan identifies only one instance in which SANE nurse Zimmerman attempted to substitute the word "survivor" for D.S.'s name.

Q:  What else did you learn regarding the history?

A:  In the survivor's own words —

Trial Counsel:  Objection.

The Court:  Rephrase your question, please.

{¶ 60} This did not prejudice Morgan's defense.  Following the court's instruction, counsel did rephrase his question asking, "[W]hen you met with [D.S.], what did you learn from her that happened to her?"  Nurse Zimmerman did not attempt to call D.S. a survivor in her response to the State's rephrased question.  Instead, Zimmerman answered, "[S]he was sexually assaulted by a friend from work."

{¶ 61} Morgan next takes issues with a jury question using the word "survivor" to describe D.S.  Throughout the trial, the court allowed the jury to submit questions for the witnesses to answer.  Immediately after Zimmerman testified, the jury proposed a question to the court, which the court read to Zimmerman: "In your

professional opinion, did the survivor appear to be under the influence of any substances other than alcohol?" We acknowledge that, in this instance, the word "survivor" is a stand-in for D.S., rather than a general term. The court read the question as proposed and did not rephrase the question. Zimmerman replied, "In my professional opinion, no."

{¶ 62} The Ohio Supreme Court has provided procedural safeguards for courts that permit juror questions, including:

> (1) require jurors to submit their questions to the court in writing, (2) ensure that jurors do not display or discuss a question with other jurors until the court reads the question to the witness, (3) provide counsel an opportunity to object to each question at sidebar or outside the presence of the jury, (4) instruct jurors that they should not draw adverse inferences from the court's refusal to allow certain questions, and (5) allow counsel to ask followup questions of the witnesses.

*State v. Fisher*, 2003-Ohio-2761, ¶ 29.

{¶ 63} Despite having the opportunity to do so, the record does not indicate that Morgan objected to the jury's question, waiving all but plain error. *See State v. Rogers*, 2015-Ohio-2459, ¶ 3. "To prevail under a plain error analysis, the appellant bears the burden of demonstrating, but for the error, the outcome of the trial would clearly have been different." *Id.*, citing *State v. Payne*, 2007-Ohio-4642, ¶ 17. That standard is not met here. In response to the jury's question, Zimmerman offered her opinion that D.S. did not appear to be under the influence of substances other than alcohol. This arguably aided Morgan's defense against the substantial-impairment rape charge. Counsel had the opportunity to ask Zimmerman further questions and did so. Morgan has not demonstrated that but for the court putting

the jury's question to Zimmerman, the outcome of the trial would have been different. As noted, as relates to D.S., sufficient evidence was presented on each element to support conviction, including D.S.'s testimony and evidence indicating Morgan's DNA was present inside D.S.'s vagina.

{¶ 64} The trial court did not err by denying Morgan's objection to Zimmerman's generic use of the word "survivor" or affect the trial outcome by reading the jury's question concerning D.S. Accordingly, assignment of error No. 4 is overruled.

{¶ 65} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

EILEEN A. GALLAGHER, A.J., CONCURS;
ANITA LASTER MAYS, J., CONCURS IN JUDGMENT ONLY (WITH SEPARATE OPINION)

ANITA LASTER MAYS, J., CONCURRING IN JUDGMENT ONLY:

{¶ 66} I concur in judgment only affirming Morgan's conviction. I write separately to address assignment of error No. 4, challenging the trial court's use of the term "survivor" when relaying a juror's question to the State's witness, and assignment of error No. 2, challenging the trial court's handling of Morgan's motion to sever under Crim.R. 14. I would conclude that the trial court erred both by failing to rephrase the juror's question referring to D.S. as "the survivor" and, by failing to order the prosecutor to provide for in camera review the statements or confessions it intended to introduce at trial, as required by Crim.R. 14 and 16(B)(1). However, I would conclude that on this record, both errors were harmless and do not warrant reversal.

{¶ 67} The majority states that Morgan failed to identify any error committed by the trial court that caused the jury to perceive D.S. as a survivor. This misstates both the record and the applicable standard of review. The term "survivor" was introduced not by the State in its question, but by the witness during direct-examination. (Tr. 480.) Defense counsel immediately objected to the unsolicited use of that term. The trial court did not expressly sustain the objection, but it instructed the State to rephrase the question. Notably, the State had not used the term "survivor" in its question.

{¶ 68} More importantly, the proper inquiry is not whether the trial court itself caused the jury to believe that D.S. was a survivor, but whether the court's failure to comply with *Fisher*, 2003-Ohio-2761, affected the outcome of the trial. *See*

*State v. Morris*, 2014-Ohio-5052, ¶ 25. By framing the issue in terms of causation rather than prejudicial impact, the majority misapprehends the standard governing evidentiary harm and trial fairness.

{¶ 69} Although the practice of permitting juror questions lies within the trial court's discretion, it presents inherent risks that require careful management. Among the potential concerns are: (1) the submission of inadmissible or prejudicial questions; (2) defense counsel's hesitation to object for fear of alienating the jury; (3) disruption of courtroom decorum; and (4) the risk that juror involvement may impair impartiality. *State v. Moss*, 2003-Ohio-743, ¶ 15 (8th Dist.); *State v. Williams*, 2017-Ohio-5598, ¶ 49 (10th Dist.); *Fisher* at ¶ 24.

{¶ 70} To mitigate those risks, the Ohio Supreme Court has provided procedural safeguards trial courts must follow when allowing juror questions. Those safeguards include: (1) requiring jurors to submit questions in writing so that the court can screen and, if necessary, rephrase questions; (2) prohibiting jurors from discussing questions before submission; (3) allowing counsel an opportunity to object and determining, outside the jury's presence, whether to disallow improper questions; (4) instructing jurors not to draw negative inferences if questions are not asked; and (5) permitting counsel to conduct follow-up examination. *Fisher* at ¶ 27-29; *State v. Siller*, 2003-Ohio-1948, ¶ 41 (8th Dist.).

{¶ 71} Here, the record reflects that the trial court initially followed these procedures. The court instructed jurors to submit written questions, consulted with counsel off the record, and relayed approved questions to the witness. However, the

trial court read the following juror question to the SANE nurse: "In your professional opinion, did the survivor appear to be under the influence of any substances other than alcohol?"

{¶ 72} During her testimony, the SANE nurse used the term "survivor" numerous times to describe, in general, individuals who experienced sexual assault. At another point during the same witness's testimony, the trial court required the State to rephrase its question after the witness referred specifically to D.S. as a survivor. In contrast, in handling the juror's question, the trial court did not adhere to *Fisher's* directive that the court screen and, where necessary, rephrase juror questions to avoid suggestive or prejudicial terminology. *See Fisher* at ¶ 27-29. By reading the question as written, the trial court itself referred to D.S. as "the survivor," undermining its responsibility to appear neutral. *See State v. Almedom*, 2016-Ohio-1553, ¶ 2 (10th Dist.). I would, therefore, conclude that the trial court erred in failing to rephrase the juror's question.

{¶ 73} Nevertheless, no objection was made when the court read the question; thus the error was not preserved for appellate review. Under Crim.R. 52(B), an unobjected-to error may be reviewed only for plain error. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). To constitute plain error, the error must be an obvious defect that affected substantial rights. In other words, the outcome of the trial must clearly have been different but for the error. *Id.*

{¶ 74} That standard is not met here. The question was substantively neutral, and the witness's answer: "In my professional opinion, no," narrowed,

rather than expanded, the scope of evidence relating to D.S.'s impairment. The response suggested that D.S. did not appear to be under the influence of substances other than alcohol, arguably aiding the defense. Moreover, the jury demonstrated its ability to consider the evidence pertaining to each complaining witness separately when it acquitted Morgan of the charges involving L.D. Accordingly, I would conclude that, under these facts, jurors were not improperly swayed by the trial court's failure to rephrase the juror's question.

{¶ 75} Ohio courts have repeatedly held that the use of terms like "victim" or "survivor" does not constitute plain error when the outcome would not have been different had the terms not been used. *See State v. Jackson*, 2023-Ohio-455, ¶ 27 (8th Dist.); *State v. Madden*, 2017-Ohio-8894, ¶ 32 (10th Dist.). On this record, the judge's single failure to rephrase a juror question referencing D.S. as "the survivor" does not constitute reversible error.

{¶ 76} I also respectfully disagree with the majority's treatment of Morgan's argument under Crim.R. 14. The majority declines to address whether the trial court erred by failing to order delivery of Morgan's statements to the court before denying the motion to sever but concludes that the trial court did not commit prejudicial error. Nothing in Crim.R. 14 requires the trial court to hold a hearing before ruling on a motion to sever, as Morgan suggests. However, Crim.R. 14 does require that, in ruling on such a motion, "the court shall order the prosecuting attorney to deliver to the court for inspection pursuant to Rule 16(B)(1) any statements or confessions made by the defendants which the state intends to introduce in evidence at the trial."

Crim.R. 16(B)(1) similarly requires the prosecutor, upon motion, to provide for inspection "[a]ny written or recorded statement by the defendant or a co-defendant, including police summaries of such statements, and including grand jury testimony by either the defendant or co-defendant."

{¶ 77} The plain language of Crim.R. 14 encompasses both joinder of offenses and joinder of defendants. *State v. Snowden*, 2019-Ohio-3006 (2d Dist.). *See State v. McKillips,* 1981 Ohio App. LEXIS 13288, *8 (6th Dist. May 1, 1981). The purpose of Crim.R. 14's in camera inspection requirement as it relates to a single defendant, is to ensure that the trial court can make an informed, case-specific decision about whether joining multiple offenses for trial would unfairly prejudice the defendant. The inspection requirement is triggered when a defendant seeks severance and the State intends to introduce the defendant's statements or confessions at trial, regardless of whether there is a single defendant, or multiple defendants. *See* Crim.R. 16(B)(1), Crim.R. 14. Without reviewing the statements or confessions the State intends to introduce, the court cannot assess whether a jury might improperly use a defendant's confession or statements made in one case as evidence of guilt in another, thus undermining the right to a fair and impartial trial. *State v. Schaim*, 65 Ohio St.3d 51, 51 (1992).

{¶ 78} Here, the State intended to introduce Morgan's recorded statement, and the defense sought severance. Under the rule's mandatory "shall order" language, the trial court was required to direct the prosecutor to deliver the statement for in camera inspection before ruling on the motion. Because the court

did not do so, I would conclude that the trial court erred in its application of Crim.R. 14.

{¶ 79} Even so, any error was harmless. *See* Crim.R. 52(A). Morgan has not shown that the trial court's failure to inspect his statements affected the outcome of the severance ruling or the verdict. As the majority explains, the State's presentation of evidence, including the challenged audio, was simple and direct, and the jury's split verdict, acquitting Morgan of the charges involving L.D., indicates that the jury was able to compartmentalize the evidence as to each complaining witness. Morgan identifies no specific aspect of his statements that, if reviewed in camera, would have compelled the trial court to sever the counts or would have altered the jury's assessment of the charges involving D.S. Accordingly, although I would find that the trial court erred in failing to order the prosecutor to provide Morgan's statements for inspection under Crim.R. 14 and 16(B)(1), this error did not affect Morgan's substantial rights.

{¶ 80} In sum, I would hold that the trial court erred both by failing to rephrase the juror's question referring to D.S. as "the survivor" and by failing to order in camera inspection of Morgan's statements as required by Crim.R. 14 and 16(B)(1). Because neither error affected the outcome of the trial, I agree that reversal is not warranted. For these reasons, I concur in judgment only in affirming Morgan's convictions.